UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL BOWENS                                    CIVIL ACTION

VERSUS                                           NUMBER:  05-5714

N. BURL CAIN, WARDEN                             SECTION:  "B"(5)

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Daniel Bowens.  Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. §2254(e)(2).[1]  For the following reasons, it is recommended that

---

[1]Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE.**

## I. PROCEDURAL HISTORY

Petitioner Bowens is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  By Orleans Parish grand jury indictment dated December 2, 1993, Bowens was charged with second degree murder.  He pleaded not guilty.  Following his plea, Bowens was examined both as to his present competency and his competency at the time of the offense. On January 13, 1994, the trial court found that he was not competent to assist his defense counsel.  Bowens again was deemed not competent at a second hearing on August 23, 1994.  A third lunacy hearing was held on October 5 and 19, 1995, at which time Bowens was found competent to stand trial.  He was tried on November 22, 1995, and found guilty as charged.  His motion for a new trial was denied on December 1, 1995.  After waiving all delays, Bowens was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On October 8, 1997, the Louisiana Fourth Circuit Court of Appeal affirmed Bowens' conviction and sentence.  <u>State v. Bowens</u>, No. 1996-KA-1199, 701 So.2d 271 (La. App. 4th Cir. 1997)(table).[2]  On

---

[2]A copy of the Louisiana Fourth Circuit's October 8, 1997 unpublished opinion is contained in the State rec., vol. 1 of 6.

May 29, 1998, the Louisiana Supreme Court denied Bowens' writ application.  State v. Bowens, 719 So.2d 1276 (La. 1998).

On or about February 10, 1999, Bowens executed a post-conviction relief application that was denied by the state district court on that same date.[3]  From that unfavorable ruling, Bowens sought writs from the Louisiana Fourth Circuit which, on April 15, 1999, ruled in his favor and directed the trial court to grant him an out-of-time appeal.  State v. Bowens, No. 1999-K-0480 (La. App. 4th Cir. April 15, 1999)(unpublished order).[4]  Bowens proceeded to file his appeal as directed and after the matter was fully briefed by the parties, the Louisiana Fourth Circuit once again affirmed his conviction and sentence on February 7, 2001.  State v. Bowens, No. 2000-KA-0506, 786 So.2d 982 (La. App. 4th Cir. 2001) (table).[5]  Writs were denied by the Louisiana Supreme Court on January 25, 2002.  State v. Bowens, 806 So.2d 670 (La. 2002).

On August 16, 2002, Bowens filed a post-conviction relief

---

[3]A copy of petitioner's post-conviction application, along with the district court's denial of same, is contained in the State rec., vol. 2 of 6.

[4]A copy of the Louisiana Fourth Circuit's unpublished order is contained in the State rec., vol. 2 of 6.

[5]A copy of the Louisiana Fourth Circuit's February 7, 2001 unpublished opinion is contained in the State rec., vol. 5 of 6.

application with the state district court.[6]  Bowens litigated his post-conviction relief application all the way to the Louisiana Supreme Court which ultimately denied relief on June 24, 2005.  State ex rel. Bowens v. State, 904 So.2d 731 (La. 2005).

On September 6, 2005, Bowens filed the instant federal habeas petition, raising the following claims for relief: 1) the standard relied on by the trial court in determining his competency to stand trial violated his right to due process; 2) the grand jury selection process was violative of his constitutional rights; 3) the indictment charging him with second-degree murder was defective because it failed to allege the essential elements of the offense; 4) he received ineffective assistance of counsel; and, 5) the trial court erred in admitting evidence regarding the production of the photographic identification evidence.  On March 18, 2008, the undersigned magistrate judge issued a Report and Recommendation

---

[6]A copy of petitioner's second post-conviction application is contained in the State rec., vol. 6 of 6.  Review of said document reflects a signing date of April 30, 2004.  However, in his "Application for Writ of Mandamus", in which petitioner seeks to have the state appellate court order the district court to rule on his second post-conviction application, petitioner provides August 16, 2002 as the filing date of his second post-conviction application.  (A copy of petitioner's "Application for Writ of Mandamus" is contained in the State rec., vol. 6 of 6).  The State, in its Response (rec. doc. 18, p. 5, n. 6), accepts August 16, 2002 as the "true" filing date of petitioner's second post-conviction application.  This court will likewise accept August 16, 2002 as the actual filing date.

(rec. doc. 29) determining, in light of <u>Salinas v. Dretke</u>, 354 F.3d 425 (5th Cir. 2004), that Bowens's out-of-time appeal did not restart the direct review process for purposes of resetting the federal limitations period and, as such, finding Bowens's habeas application to be untimely.  On September 18, 2008, the district court issued Order and Reasons (rec. doc. 31) adopting the magistrate judge's Report and Recommendation and ordering that Bowens's habeas application be dismissed as untimely.  (Rec. doc. 1, p. 15).

On January 13, 2009, the United States Supreme Court, in <u>Jimenez v. Quarterman</u>, 555 U.S. 113 (2009), effectively abrogated <u>Salinas</u>, determining, practically speaking, that a state court's granting of an out-of-time appeal does restart the direct review process for purposes of resetting the federal limitations period. On June 10, 2010, the United States Fifth Circuit Court of Appeal, based upon <u>Jimenez</u>, along with its December 21, 2009 opinion in <u>Womack v. Thaler</u>, 591 F.3d 757 (5th Cir. 2009), vacated the district court's determination that the above-captioned action was untimely and remanded the matter for further proceedings consistent with <u>Jimenez</u>.  (Rec. doc. 40).

On September 23, 2010, the undersigned magistrate judge, recognizing that in light of the Supreme Court's opinion in <u>Jimenez</u> Bowens's federal habeas application was timely, ordered the State

5

to file a supplemental response addressing Bowens's habeas application on the merits. (Rec. doc. 42). In its supplemental response (rec. doc. 48), the State concedes that Bowens's habeas application is timely and that Bowens has exhausted his state court remedies as required under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).

## II. <u>FACTS</u>[7]

On September 18, 1993, at approximately 8:00 p.m., Renaldo Cains was shot seven times in a courtyard in the 1500 block of Bienville Street. Kevin Pollard testified that as he stood in a driveway about fifty feet away, he saw Renaldo Cains in the Bienville Court of the Iberville Housing Project. He testified that there was a party going on in the courtyard and that when he heard gun shots, he ran toward the disc jockey. When he heard more shots, he ran in a different direction and saw Daniel Bowens and Landon "Minnesota" Marshall shooting Mr. Cains. He testified that after he heard the shooting stop, he ran back to Bienville Street and headed to Mr. Cains's girlfriend's house. He was stopped by the police before he got there. Mr. Pollard chose Mr. Bowens' and Mr. Marshall's pictures out of a photographic lineup a few days later.

Anthony Thomas testified that he was in the courtyard talking

---

[7]The facts noted hereinafter are as set forth by the state appellate court in connection with Bowens' direct appeal. <u>State v. Bowens</u>, No. 2000-KA-0506, 786 So.2d 982 (La. App. 4th Cir. 2001) (table).

6

to a child at the party where the disc jockey was playing music when he heard gun shots.  He said that he was fifteen to twenty feet away from where the shots originated and that he saw two people with guns.  The two people were Landon Marshall and Daniel Bowens, with Mr. Bowens standing over and shooting Renaldo Cains, who was on the ground.  Mr. Thomas said that Mr. Bowens and Mr. Marshall then ran off together.  He stated that, after he learned that Mr. Cains had died, he called the police and later picked Mr. Bowens' and Mr. Marshall's pictures out of a photographic lineup.

The autopsy revealed that Mr. Cains had been shot seven times, with all but one shot entering from behind.  The pellets and shell casings recovered from the scene were all fired from a common weapon.  Officer Leroy Smith testified that one witness, who refused to identify himself, told him that only one person shot Mr. Cains. Detective Marco Demma testified that he was contacted by Anthony Thomas a few days after the shooting and that on September 27 he met with Anthony Thomas and Kevin Pollard to show them the photographic lineup.  He also testified that, prior to this interview, he obtained the names of Mr. Bowens and Mr. Marshall from Mr. Cains's mother, who had received telephone calls from people afraid to come forward.

Mary Alice Hewitt, Mr. Bowens's mother, testified that on the day of the murder, she was with her son at the hospital because he

7

had been shot in the thigh.  She also testified that he was treated and released the same day and that she dropped him off at home.  She stated that he was barely able to walk but he was not on crutches. She admitted she was not with him at 8:00 p.m. that night when the shooting occurred.    Nasacci George, Mr. Bowens' sister, also testified that she was with her brother at the hospital and that her brother was limping and dragging his leg.  She admitted not seeing her brother later that night.  She also testified that her brother was shot in the head on November 2, 1993, and that he was in the hospital until just before Christmas.

Officer Roland Matthews testified that he investigated the November shooting of Mr. Bowens and that two arrest warrants were issued in that matter, but he denied that one of those suspects was Kevin Pollard.

Mr. Bowens testified that Mr. Cains was the one who shot him on September 18, but admitted that he did not tell the police.  He further testified that Kevin Pollard, whose nickname was "Wolf," a man nicknamed "Oreo," and someone named Edward shot him the second time in November.

He stated that he was at home when Mr. Cains was shot because he could barely walk.  He admitted that he did not tell the police previously that Kevin Pollard was one of the persons who shot him in November.

8

## III. <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §2254(d)(1).  The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is

9

> objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

**IV.   <u>ANALYSIS</u>**

**A.   Standard Employed in Determining Competency Violative of Due Process**

Bowens argues that the State, in determining whether he was competent to stand trial, employed a standard of review that was deemed violative of due process by the United States Supreme Court in <u>Cooper v. Oklahoma</u>, 517 U.S. 348 (1996) and, as such, he is entitled to habeas corpus relief.

In addressing Bowens's claim in connection with his first direct appeal, the Louisiana Fourth Circuit reviewed the pertinent factual background.

> Two sanity hearings were held at which Mr. Bowens was found incompetent to stand trial; and, at the second hearing in August 1994, Dr. Kenneth Ritter, a member of the sanity commission who examined defendant, opined that Mr. Bowens may never regain competency due to the bullet wound to his head. However, at the hearing on October 5,

1995, Dr. Ritter testified that Mr. Bowens was now competent to proceed under the <u>Bennett</u>[8] criteria. He testified that Mr. Bowens was no longer severely depressed, that other parts of his brain had taken over to compensate for the brain damage caused by the bullet, and that his leg injury had healed. On cross-examination, Dr. Ritter stated that Mr. Bowens told him that his Prozac treatment had been discontinued; however, he did not confirm that information. Dr. Ritter testified that it was his opinion that Mr. Bowens should continue on Prozac because it was conceivable that his depression would return without its continued use. Dr Ritter stated that he explained the criminal charges to Mr. Bowen, and Mr. Bowen "understands what's going on." Thus, at the time of the hearing, Dr. Ritter found Mr. Bowen competent to stand trial. It was stipulated that Dr. Rafael Salcedo also would testify that defendant was competent to proceed.

<u>Bowens</u>, No. 1996-KA-1199, p. 5.

As the state appellate court explained, in <u>Cooper</u>, <u>supra</u>, the Court determined that a defendant may not be required to prove his competence "by clear and convincing evidence." Instead, as provided in <u>Medina v. California</u>, 505 U.S. 437 (1992), a state may require a defendant "to prove his incompetence by a preponderance of the evidence." <u>Bowens</u>, No. 1996-KA-1199, p. 6. At the time of Bowens's competency hearings, the applicable law, as provided under La.C.Cr.P. art. 648(A), provided that a criminal prosecution could proceed unless a showing was made by clear and convincing evidence

---

[8] <u>State v. Bennett</u>, 345 So.2d 1129 (La. 1977).

11

that the defendant does not have the mental capacity to proceed.[9]

In addressing petitioner's claim that the trial court employed the unconstitutional "clear and convincing" standard of review, rather than the proper "preponderance of the evidence" standard of review, the Louisiana Fourth Circuit observed:

> The transcript of the lunacy hearing of October 5, 1995 [the lunacy hearing at which petitioner was deemed competent to proceed to trial], does not reflect which test, that is, "clear and convincing" or "preponderance of the evidence," was used by the trial court in reaching its conclusion.  Therefore, we must assume that the trial court applied the statute as written, and applied the more stringent "clear and convincing" criteria.  This was error.

Bowens, No. 1996-KA-1199, p. 6.

The state appellate court, however, determined that despite this error, a reversal of petitioner's conviction was not warranted since, employing the proper standard of review, petitioner was competent to proceed to trial.  Specifically, the court reasoned:

> A review of the record reveals that Mr. Bowens failed to prove his mental incapacity to proceed even by a preponderance of the evidence.  Dr. Ritter, who had testified over a year earlier that he did not think that defendant would regain his competency, gave his opinion that defendant had regained his capacity to proceed; and, Dr. Salcedo was of the same opinion.  On cross-examination, no testimony was elicited to refute the doctors' opinions that Mr. Bowens was competent to assist his counsel at that point in time.  Therefore, any error by the trial court is harmless.

---

[9]Article 648(A) has since been amended to require a showing of incompetency "by a preponderance of the evidence".

12

Bowens, No. 1996-KA-1199, pp. 6-7.

"Our standard of review in an AEDPA case is well-established: deference must be given to factual findings of the state court in the absence of clear and convincing evidence to the contrary." Hayes v. Thaler, 361 Fed. Appx. 563, 565 (5th Cir. 2010) (citing 28 U.S.C. §2254(e)(1)).

In the factually similar case of Lambert v. Cain, 2001 WL 274511 (E.D. La. March 20, 2001), petitioner argued that he was entitled to habeas relief because the state trial court, in determining him competent to proceed to trial, had employed the "clear and convincing" standard of review, as required under La.C.Cr.P. art. 648(A), which the Supreme Court in Cooper, supra, deemed unconstitutional. On state habeas review, the state district court recognized the error, but denied Lambert relief without the necessity of an evidentiary hearing. Specifically, the state district court, like the state appellate court in the instant matter, reviewed the evidence presented at the competency hearing and, based on same, determined that regardless of which standard of review was employed, the evidence supported a finding of competence. Lambert, 2001 WL 274511 at *9.

In reviewing the above factual determination, United States District Court Judge Charles Schwartz first recognized the deferential standard of review to which the state habeas court's

13

finding of fact was entitled.  Id. at 11.  ("state court factual determinations are accorded the presumption of correctness, unless rebutted by 'clear and convincing evidence.'").  Observing that "the state court's [factual] finding of competency remains unassailed to date [as] Lambert has offered no evidence to rebut the facts upon which the state court based its finding of competence", Judge Schwartz determined that Lambert's "assignment of error regarding an alleged constitutionally deficient standard utilized in adjudicating his competency is wholly without merit...." Id. at 14-15.

In the instant matter, the Louisiana Fourth Circuit Court of Appeal, based upon its review of the unrefuted opinions of Drs. Ritter and Salcedo, made the factual determination that employing the proper preponderance of the evidence standard of review, Bowens was competent to proceed to trial.  A review of the state court record does not reveal and Bowens has failed to submit appropriate evidence reflecting that the state appellate court's factual finding in this regard is not entitled to a presumption of correctness.

Furthermore, the Court cannot fail to note that Bowens took the witness stand at his trial, testifying on his own behalf.[10]  The colloquy that ensued revealed that Bowens was aware of the charges

_____

[10]State rec., vol. 1 of 6, trial transcript p. 145, line 10 through p. 152, line 14.

against him for which he was on trial; that he believed his memory was good the time of his trial and that he understood and competently responded to questions presented to him on both direct and cross examination by counsel.  In his testimony, Bowens attempted to question the credibility of Kevin Pollard, an eye-witness to the shooting of the deceased, by stating that Pollard, along with two other people, had shot him almost two months after Renaldo Cains had been killed, thereby implying a vendetta by Pollard against Bowens.  The tenor of the testimony elicited does not reflect a mental status that either prevented Bowens from understanding the nature of the proceedings against him or precluded him from actively assisting counsel in his defense.

Accordingly, this court finds the instant claim for habeas corpus relief to be without merit.

**B.  Unconstitutional Composition of Grand Jury**

Bowens's complaint regarding the composition of the grand jury which indicted him is two-fold.  First, Bowens argues that the foreperson for the Orleans Parish grand jury which indicted him was selected in a discriminatory manner.

The United States Supreme Court has made clear "that a criminal defendant's right to equal protection of the laws has been denied when he is indicted by a grand jury from which members of a racial group purposefully have been excluded."  Rose v. Mitchell, 443 U.S.

545, 557 (1979); see also Alexander v. Louisiana, 405 U.S. 625, 628 (1972) ("[A] criminal conviction of [an African-American] cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which [African-Americans] were excluded by reason of their race."). If a petitioner successfully demonstrates racial or gender discrimination in the selection of the grand jurors who indicted him, he is entitled to relief notwithstanding his failure to demonstrate prejudice therefrom. Id.; Neal v. Delaware, 103 U.S. 370, 394 (1880).

In Castaneda v. Partida, 430 U.S. 482, 494 (1977), the United States Supreme Court set forth what a petitioner must show to prove "an equal protection violation has occurred in the context of grand jury selection".

> [He] must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. This method of proof, sometimes called the 'rule of exclusion,' has been held to be available as a method of proving discrimination in jury selection against a delineated class. Finally, . . . a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raise by the statistical showing. Once [a petitioner] has shown

16

substantial underrepresentation of his group, he has made
out a prima facie case of discriminatory purpose, and the
burden then shifts to the State to rebut that case.

Id. at 494-495 (citations and footnote omitted).

In an effort to satisfy the above-described burden of proof,
specifically, the requisite degree of underrepresentation of both
African-Americans and females, Bowens provides no independent
evidence, but rather, relies solely on the evidence submitted in a
case arising from Orleans Parish Criminal District Court, State v.
Fleming, No. 401-182, Section "K", wherein the Honorable Arthur L.
Hunter quashed an Orleans Parish grand jury indictment based upon
a finding that the defendants, Fleming and Trainor, had presented,
and the State had failed to rebut, prima facie cases of
discrimination in the selection of grand jury forepersons in Orleans
Parish between the years 1987 and 2000, all in violation of the
Fourteenth Amendment.  However, on appeal, the Louisiana Fourth
Circuit reversed Judge Hunter's decision, finding that the evidence
provided by Fleming and Trainor, the same evidence relied upon by
Bowens, was insufficient for the purpose of satisfying the burden
of proving a sufficient underrepresentation via a comparison of the
proportion of the groups, African-Americans and women, in the total
population with the proportion of the groups called to serve as
grand jurors.  State v. Fleming, 846 So.2d 114, 120 (La. App. 4 Cir.
2003).  The Louisiana Supreme Court thereafter denied defendants'

17

writ application.  State v. Fleming, 860 So.2d. 1132 (La. 2003).

The evidence submitted by Bowens in support of his claim that the grand jury which indicted him was chosen in violation of his right to equal protection has not only been deemed insufficient to satisfy the requisite burden of proof in Fleming, 846 So.2d at 120, it has likewise been deemed insufficient by United States Magistrate Judges Louis Moore, Jr., and Karen Wells Roby.

In Lindsey v. Cain, 2009 WL 1575466 (E.D. La. May 29, 2009) (Moore, MJ.), Lindsey argued that his constitutional rights were violated by virtue of the fact that the grand jury foreperson of the Orleans Parish grand jury which indicted him had been selected in a discriminatory manner.  In support of his claim, Lindsey, like Bowens, relied solely upon the evidence submitted in support of the equal protection claim raised in State v. Fleming, Orleans Parish Criminal District Court No. 401-182, Section "K".  Magistrate Judge Moore, in rejecting Lindsey's claim, noted that Lindsey's reliance on Fleming, supra was misplaced as the Fleming court's decision finding an equal protection violation had been "reversed and vacated".  Lindsey, 2009 WL 1575466 at *10.

Magistrate Judge Moore went on to determine that he agreed with the state appellate court's decision to reverse the district court's finding of an equal protection violation based upon the evidence provided.  Specifically, the court provided:

18

[B]ased upon the statistics offered, this court is in agreement with the state appellate court's reasoning in <u>Fleming</u>, 846 So.2d 114, that the evidence does not establish substantial under-representation.  The burden is on petitioner to establish, as part of his prima facie case, substantial under-representation.  <u>Castaneda</u>, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498.  The evidence submitted in the <u>Fleming</u> case showed that a total of thirty-one forepersons were chosen during the relevant thirteen year period, of which the race and gender of six grand jury forepersons were unknown.  As the state appellate court found in <u>Fleming</u>, the "[d]efendants' statistical evidence was flawed because it was drawn from incomplete data . . . it is quite possible that 'the missing data could prove no disparity at all in the race and gender of the forepersons." <u>Fleming</u>, 846 So.2d 122. In other words, if out of those thirty-one grand jury forepersons, there were sixteen African-Americans (10 known to be African-American and 6 whose race was unknown but potentially African-American), then more than 51.6 percent of the grand jury forepersons could have been African-American.  Since blacks comprised 58 percent of the registered voters at that time, the absolute statistical disparity would be less than 7 percent. Although the Supreme Court "has never announced mathematical standards for the demonstration of systematic exclusion of blacks," <u>See</u> <u>Rideau v. Whitley</u>, 237 F.3d 472, 487 (5th Cir.2000) (citations and internal quotations omitted) the U.S. Fifth Circuit has found that absolute disparities of 10 percent or less are insufficient to warrant relief.  <u>See</u> <u>Mosley v. Dretke</u>, 370 F.3d 467, 479 (5th Cir.2004)(Absolute difference of 9.4 percent does not establish substantial under-representation), <u>citing</u> <u>United States v. Maskeny</u>, 609 F.2d 183, 190 (5th Cir.), <u>cert</u>. <u>denied</u>, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980)(less than 10 percent disparity insufficient to warrant relief).  The same would be true of the alleged disparity in gender representation which petitioner claims occurred in the selection of the grand jury foreperson.  The grand jury forepersons selected over the thirteen year period potentially consisted of 17 women (11 known to be females and 6 unknown but possibly female) out of 31, yielding a percentage of female grand jury forepersons of approximately 55 percent compared to a registered voter

pool of 57 percent females. The 2 percent absolute disparity would again be insufficient to establish substantial under-representation. Although the court recognizes that it is unlikely that all six of the unknown selected forepersons were black or female, the fact remains that petitioner cannot prove under-representation with such incomplete evidence.

Lindsey, 2009 WL 1575466 at 10.

Similarly, in Jones v. Cain, 2010 WL 3924010, 24 (E.D. La. Sept. 10, 2010) (Roby, MJ.), Jones, in connection with his equal protection claim in the context of the selection of his grand jury foreperson, submitted no documentation or other evidentiary support for his claim. Instead, Jones relied upon "the statistics introduced into evidence in the Trainor/Fleming case", Orleans Parish Criminal District Court No. 401-182, Section "K". Id. In rejecting Jones's equal protection claim, Magistrate Judge Roby agreed with the Louisiana Fourth Circuit's assessment in Fleming, 846 So.2d at 122, that the statistical evidence, submitted in the Trainor/Fleming case and relied upon by Jones, was deficient as a result of its incompleteness. Jones, 2010 WL 3924010 at *25.

Based upon the above, this Court finds that Bowens has failed to make the requisite prima facie case to show that the foreperson for the grand jury which indicted him was selected in a discriminatory manner. Thus, his claim for habeas relief is without merit.

20

Second, Bowens argues that the grand jury selection procedure employed in Orleans Parish at the time he was indicted violated the Louisiana constitutional prohibition against the passage of local laws concerning criminal actions.  Bowens's argument in this regard is supported by the Louisiana Supreme Court's opinion in State v. Dilosa, 848 So.2d 546 (La. 2003), wherein the court determined that the provisions of Louisiana law which established a unique method for the selection of the grand jury venire and the foreperson in Orleans Parish was indeed violative of the Louisiana constitutional prohibition against the passage of local laws concerning criminal actions.  However, as this court provided in its Report and Recommendation issued in Varnado v. Cain, Civil Action 02-1286 c/w 03-753 and 03-754, doc. no. 28, p. 5 (E.D. La. Feb. 2, 2004) (Chasez, MJ.), "Dilosa affords [petitioner] no solace because it is axiomatic that federal habeas relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. §2254(a); Engle v. Issac, 456 U.S. 107, 102 S.Ct. 1558 (1983); Bailey v. Procunier, 744 F.2d 1166, 1168 (5th Cir. 1984)."

## C.  Defective Indictment

Bowens alleges that the grand jury indictment in his case was unconstitutionally defective because it failed to allege the

essential elements of the charged offense of second degree murder. Bowens was charged with the second-degree murder of Renaldo Cains by way of the commonly used "short form" indictment authorized by La.C.Cr.P. art. 462 and La.C.Cr.P. art 465(A)(32). Specifically, the pertinent indictment provided:

> The Grand Jurors of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Orleans, in the name and by the authority of the said State, upon their oath, PRESENT That one Landon Marshall and one, Daniel Bowens each, late of the Parish of Orleans on the 18th day of September in the year of our Lord, one thousand, nine hundred ninety-three in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans committed Second Degree Murder of Renaldo Cains, contrary to the form of Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of same.[11]

In support of his argument that his indictment was defective and, as such, he should be granted habeas corpus relief, Bowens relies upon U.S. v. Cabrera-Teran, 168 F.3d 141 (5th Cir. 1999). In Cabrera, authorities filed a complaint against Joel Cabrera-Teran ("Cabrera")stating that he "'did unlawfully, knowingly and willfully re-enter the United States from the Republic of Mexico after having [earlier] been arrested and deported . . .' in violation of 8 U.S.C. §1326." Id. at 142-143. Thereafter, a grand jury indicted Cabrera, charging: "'Joel Cabrera-Teran, an alien who had previously been

---

[11]State rec., vol. 1 of 6.

deported, thereafter entered the United States of America having not obtained the consent of the Attorney General of the United States for reapplication by the Defendant for admission into the United States.'" Id. at 143.  Cabrera argued that the indictment was defective because it did not include "the 'arrest' element of illegal reentry."  Id.  The Fifth Circuit agreed and vacated his conviction.  Specifically, the Fifth Circuit found that in order to be sufficient, the indictment had to include each material element of the offense charged.  Because Cabrera's indictment failed to include the arrest element, it "fail[ed] to charge an offense, leaving the district court without jurisdiction."  Id. at 147.

Bowens' reliance upon Cabrera is misplaced.  In United States v. Longoria, 298 F.3d 367, 372 (5th Cir. 2002), the Fifth Circuit specifically recognized that its earlier decisions, including Cabrera, providing that a defective indictment deprives a court of jurisdiction, have been overruled by the United States Supreme Court in U.S. v. Cotton, 535 U.S. 625, 122 S.Ct. 1781 (2002).

It is well-established that a deficient indictment will provide a basis for federal habeas relief if the defect is so significant that the convicting court lacked jurisdiction under state law. Nethery v. Collins, 993 F.2d 1154, 1157 (5th Cir. 1993); Yohey v. Collins, 985 F.2d 222 (5th Cir. 1993); Morlett v. Lynaugh, 851 F.2d

1521 (5th Cir. 1988), <u>cert</u>. <u>denied</u>, 489 U.S. 1096, 109 S.Ct. 1546, 103 L.Ed.2d 850 (1989).  Resolution of such an issue on federal habeas review is precluded "[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case . . . ."  <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985) (quotation and citation omitted); <u>Murphy v. Beto</u>, 416 F.2d 98, 100 (5th Cir. 1969) ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.").

Bowens' claim challenging the sufficiency of his indictment was presented to the Louisiana Supreme Court in his post-conviction application.  By denying the application, the Louisiana Supreme Court necessarily acquiesced in the state trial and appellate courts' dismissal of that claim on the basis that the indictment was sufficient under Louisiana state law.  <u>See</u> <u>Alexander</u>, 775 F.2d at 599 ("By refusing to grant appellant relief . . . the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.").  The Louisiana Supreme Court has therefore had the opportunity to address Bowens' challenge to his indictment and has by inference determined that the indictment was proper.  For this reason, federal review of the instant claim is

24

prohibited.

Even if due process analysis is applied, the United States Supreme Court has held that an indictment is sufficient if it both informs the defendant of the accusation against him so as the enable him to prepare his defense, and affords him protection against double jeopardy. United States v. Debrow, 346 U.S. 374 (1953). The sufficiency of a state court bill of information or indictment will not be reviewed under Section 2254 unless it can be shown that it is so defective that it deprives the convicting court of jurisdiction. McKay v. Collins, 12 F. 3d 66, 68 (5th Cir. 1994).

As noted above, the indictment form used in Bowens' case was authorized by La.C.Cr.P. art. 462 and La.C.Cr.P. art. 465(A)(32). This same indictment form has been found to provide the necessary due process protections required by federal law. See Lindsey v. Cain, 2009 WL 1575466, *12 (E.D. La. May 29, 2009) (Moore, MJ.); Brown v. Cain, 2001 WL 96410, *3 (E.D. La. Feb. 2, 2001) (Schwartz, J.); Liner v. Phelps, 731 F.2d 1201 (5th Cir. 1984).

Bowens was on notice, via his indictment, of the crime of which he was accused, the date and venue of the murder, and the identity of the victim. These details comply with the test for constitutional sufficiency established by the Supreme Court. Thus, the decisions of the state district and appellate courts, upheld by

the Louisiana Supreme Court, were not contrary to or an unreasonable application of Supreme Court precedent.  Bowens is not entitled to federal habeas corpus relief.

**D.  Ineffective Assistance of Counsel**

The seminal Supreme Court decision regarding ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the <u>Strickland</u> test, "it is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993), <u>citing</u> <u>Strickland</u>, 466 U.S. at 690.  To prove prejudice under the <u>Strickland</u> standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

26

Bowens asserts that counsel was ineffective due to his failure to interview and subpoena defense witnesses.  Specifically, Bowens asserts that counsel should have called Delma Marzett, Corrette Quinn, Oneal Ford, Glenda Elzy, Elizabeth Williams and Joe Williams to testify.  All of these witnesses, according to Bowens, allegedly offered testimony at co-defendant Landon Marshall's trial, supposedly stating that Marshall was not in the area at the time of the shooting.  While none of these witnesses, by Bowens's admission, would have offered testimony regarding his whereabouts at the time of the shooting, their testimony, according to Bowens, would have been beneficial in damaging the credibility of the State's witnesses, Anthony Thomas and Kevin Pollard, who stated that both Bowens and Marshall were standing over the victim at the time of the shooting.

As noted above, to prove prejudice in connection with defense counsel's alleged deficiency in failing to call the above witnesses, Bowens must show that it is reasonably probable that had these witnesses been called, the result of his trial proceeding would have been different.  Bowens has clearly failed to satisfy his burden of proof in this regard.  First, as Bowens admits, the witnesses would have offered no testimony as to his whereabouts at the time of the shooting.  Second, as the State notes in its response (rec. doc. 48, pp. 30-31), the credibility of the uncalled witnesses is dubious

since, despite their alleged testimony that Marshall was not in the area when the shooting occurred, Marshall was found guilty. Accordingly, the court finds that Bowens has failed to make the requisite prejudice showing and, as such, his ineffectiveness claim is without merit.

Next, Bowens asserts that counsel was ineffective due to his failure to seek a continuance of the trial.  Specifically, Bowens provides that counsel was appointed to represent him only 32 days before trial commenced and, as such, counsel had insufficient time to prepare a defense.  However, Bowens provides no specifics regarding what actions counsel could have taken other than calling those witnesses who offered testimony at his co-defendant's trial. As set forth above, Bowens was not prejudiced by counsel's inaction in this regard.  In the absence of specifics regarding what counsel should have done to better prepare for trial, the court finds that Bowens has failed to satisfy his burden of proof under Strickland.

Bowens also asserts that counsel was ineffective due to his failure to question State witnesses Kevin Pollard and Anthony Thomas regarding whether they had struck a deal with the State in exchange for their testimony.  However, as shown below, counsel was not ineffective in failing to engage in the line of questioning suggested by Bowens because there was no factual basis for such

28

questioning.

In a "Motion for Bill of Particulars and Discovery and Inspection" filed by Donald Pinkston, defense counsel on Marshall's behalf, the following inquiry was made:

> 57.  Are any of the State's witnesses currently under indictment by the State, under an agreement of any type of immunity or plea bargaining, or do they have charges pending on which no disposition has been made for crimes arising out of the alleged incident with which the defendant is charged or for any other crime? [Citation omitted.][12]

In its "Answer to Motion for Bill of Particulars", the State responded: "No."[13].  In addition, the record reflects that Bowens' counsel did, in fact, question both Pollard and Thomas as to their prior criminal history.  Indeed, defense counsel attempted to elicit information pertaining to both past arrests and past convictions, leading to a heated colloquy with the Court and the assistant District Attorney as to the appropriateness of questions dealing with past arrests.  There is nothing in the record to suggest that either witness had a criminal conviction of any nature at the time they testified against Bowens and nothing to indicate that the Court prevented Bowens' counsel from inquiring has to past convictions. I

---

[12]State rec., vol. 1 of 6, p. 101.

[13]State rec., vol. 1 of 6, p. 118.

Based upon the above, it is clear that defense counsel had no basis to question State witnesses Kevin Pollard and Anthony Thomas regarding any plea deals they may have entered into with the State in exchange for their testimony.  And, although Bowens claims both men were under criminal charges of some nature at the time of their testimony against him, he gives the Court no particulars in that regard.  As such, counsel was not deficient in failing to engage in such questioning and petitioner has failed to satisfy his burden of proof under Strickland.

Bowens next claims that counsel was ineffective due to the fact that he informed jurors, during his opening statement, that Bowens's co-defendant, Landon Marshall, had been convicted.  According to Bowens, the only justification counsel would have in informing jurors of Marshall's conviction would be to attempt to place all the blame, i.e., pin the murder, solely on Marshall and "[a] review of the record here reflects that counsel made no such attempt." (Rec. doc. 1, Bowens' supporting memorandum, p. 27).  As reflected below, Bowens's "review of the record" is faulty.

The trial transcript reflects that defense counsel did indeed advise jurors, during his opening statement, that "Landon Marshall

has already been convicted of this offense."[14]  However, contrary to Bowens' assertion, counsel informed jurors of this fact in an attempt to place all the blame, i.e., pin the murder, solely on Marshall.  Earlier in his opening statement, defense counsel advised jurors:

> Basically, what you're going to learn that happened that day was that, indeed, Renaldo Cains was killed. However, before he died you're going to learn that Renaldo Cain [sic] said that he did not know who shot him, and that there was only one perpetrator.  This is in the police report, the police report the officer took on the scene.[15]

Thus, once again, there is no factual basis to support Bowens' ineffectivness claim.  As such, he has failed to show a deficiency on the part of counsel and, therefore, failed to satisfy his burden of proof under Strickland.

Bowens argues that counsel was ineffective in failing to object to the photographic identification of him as the shooter by State witnesses Kevin Pollard and Anthony Thomas.  According to Bowens, the photographic identifications were inadmissible because they were irrelevant in light of the fact that "both witnesses testified that they knew both [Bowens] and co-defendant Marshall and had identified

_____

[14]State rec., vol. 1 of 6, trial transcript, p. 11, lines 9-10.

[15]State rec., vol. 1 of 6, trial transcript, p. 10, lines 2-9.

them as the shooters prior to the line up." (Rec. doc. 1, Bowens's supporting memorandum, p. 28).

As stated earlier, in order to show prejudice, as required under Strickland, Bowens has to show that if not for counsel's error in failing to object to the photographic identification it is reasonably probable that the result of his proceeding would have been different. Clearly, in light of the fact that the witnesses identified Bowens as the shooter before they viewed the photographic lineup, Bowens cannot make the requisite prejudice showing. Accordingly, the instant claim is without merit.

Bowens next claims that counsel was ineffective due to the fact that during his cross-examination of New Orleans Police Detective Marco Demma he elicited damaging hearsay testimony regarding information obtained by Demma from the victim's mother. A review of the trial transcript reflects that defense counsel, pursuant to his cross-examination of Detective Demma, arguably attempted to diminish the significance of the testimony of State witnesses Pollard and Thomas by establishing that everyone in the neighborhood where the shooting occurred knew everyone else and, as such, Detective Demma could have ascertained the alleged suspects' first and last names from most anyone by simply making inquiries in the

neighborhood.[16]   In connection with said questioning, Detective Demma admitted that he had, in fact, initially obtained the suspects' names not from witnesses Pollard and Thomas, but from the victim's mother.

> THE WITNESS [DETECTIVE DEMMA]:
>      The witnesses [Pollard and Thomas] came to the homicide office on September 27th, 1993.  Prior to that date I had received the names of Daniel Bowens and Landon Marshall from Renaldo Cains' mother who lived, also, in the Iberville Project where this incident occurred.  I had the names at that time.  And it was at that time that I prepared the photographic lineups and showed them to the witnesses.
>
> BY MR. SCACCIA [DEFENSE COUNSEL]:
> Q.   How do you know where she got the names from?
> A.   (No response.)
> Q.   How do you know that?
> A.   She had received numerous telephone calls --
> Q.   Telephone calls from numerous people?
> A.   -- from people who were willing to speak with her, but who would not come forward.[17]

To the extent that counsel arguably elicited the above hearsay testimony as part of his defense strategy, his action cannot be deemed deficient.  See Moore v. Johnson, 194 F.3d 586, 612 (5th Cir. 1999) (defense counsel's action in eliciting damaging testimony was

---

[16]See State rec., vol. 1 of 6, trial transcript, p. 83, lines 10-32.

[17]State rec., vol. 1 of 6, trial transcript, p. 86, lines 10-31.

deficient where neither the record nor common sense supported a finding that counsel's action was motivated by a strategic purpose).

However, even if defense counsel's action in eliciting the above testimony from Detective Demma does constitute a deficiency on the part of counsel, Bowens cannot satisfy <u>Strickland's</u> prejudice prong.  Had counsel not elicited the complained-of testimony, the jury would still have properly considered the testimony of Kevin Pollard and Anthony Thomas, eyewitnesses to the crime who each positively identified Bowens as the shooter both in photographic lineups and at trial.  Accordingly, Bowens is not entitled to habeas relief.

Finally, Bowens argues that counsel was ineffective based upon his failure to challenge his grand jury indictment.  Bowens claims that counsel should have challenged the indictment since "[t]he record evidence clearly reflects that [he] has proven a prima facie case of race/gender discrimination in the selection of grand jurors in Orleans Parish in violation of the equal protection and due process clauses of the 14th amendment."  (Rec. doc. 1, Bowens's supporting memorandum, pp. 31-32).

Bowens' ineffectiveness claim is without merit because the factual basis for his claim, that he has proven a prima facie case that the members of his grand jury were chosen in a discriminatory

manner, is without merit.  Thus, once again, Bowens has failed to satisfy his burden of proof under <u>Strickland</u>, and, as such, is not entitled to habeas corpus relief.  Furthermore, even if Bowens' argument were correct, there would still have been no prejudice.  A deficient indictment, were it raised in a timely fashion as required, would have resulted in an immediate re-indictment of Bowens and the continuation of the proceedings against him due to the gravity of the charges lodged.  It would not have resulted in the charges against him being dismissed with prejudice.

### E.   Trial Court Erred in Admitting Evidence Regarding Production of Photographic Identification Evidence

Though unclear from his memorandum, Bowens appears to complain that the trial court erred in allowing Detective Marco Demma offer testimony regarding how he compiled the photographic lineups pursuant to which eyewitnesses, Kevin Pollard and Anthony Thomas, identified Bowens as one of the shooters.  According to Bowens, pursuant to this testimony the State, over the objection of defense counsel, was improperly allowed to inform jurors that an independent source, i.e., a source other than the two eyewitnesses, identified Bowens as the shooter.

The trial testimony at issue is as follows:

[DIRECT EXAMINATION OF DETECTIVE DEMMA]

35

BY MR. MARKS [Prosecutor]:

Q.  Did you have an occasion to locate any witnesses?

A.  Yes, sir, I did.

Q.  And, Detective Demma, how did that go about?

A.  In fact, the --


BY MR. SCACCIA [Defense Counsel]:

     I'm going to object to this, Your Honor.  He wants to
know the procedure that he went -- that he undertook for
locating these witnesses, and what would necessarily
involve hearsay.


MR. MARKS:

      Judge, I've sought to elicit no hearsay at this
point.  If, in fact, hearsay does become affective [sic],
then certainly Mr. Scaccia knows, as a competent counsel,
he has a right to object at that point, but not at this
point....


THE COURT:

     I'll let him go through the procedure, Mr. Scaccia.
That doesn't -- from that question it doesn't sound as
though he's going to ask him to tell what anyone else
told him.

     Keep that in mind, Detective....


MR. MARKS:

Q.  How did you go about locating the witnesses?

A.  In fact, I was contacted by the witnesses.  They were
identified at that point, and arrangements were made to
have those individuals come to the homicide office where
I could interview them formally.

Q.  Who contacted you?

A.  Initially it was --


MR. SCACCIA:

Excuse me.  I'm going to object to that.  This is not the best evidence.  It necessarily involves hearsay.  It has to do with the photographic lineup, which we're willing to stipulate to.  And it's an effort to get in, through illegal means, what is not permissible by legal means.

THE COURT:

The question is:  Who contacted him?"  I'll let him answer that.  I'd overrule that objection as to that question.

BY MR. MARKS:

Q.  Who contacted you, Detective?

A.  A Mr. Anthony Thomas.

Q.  And do you recall the date that he contacted you?

A.  Yes, sir.  It was the evening after I initiated this investigation on September 21, 1993.

Q.  And were arrangements made for he and/or any other witnesses to met [sic] you at your office?

A.  Yes, sir.  He and a Mr. Kevin Pollard were to come to the homicide office where I could interview them at a given time.

Q.  Okay.  And did that interview, in fact, occur?

A.  Yes, sir, it did, on September 27th of 1993.

**Q.  Prior to September 27th were you able to formulate any suspects?**

**MR. SCACCIA:**

**Objection.  That's going to call for conclusions –**

**THE COURT:**

**I would sustain that....**

**BY MR. MARKS:**

**Q.  Who did you speak with prior to September 27th in**

37

regards to this case?


MR. SCACCIA:

     Objection, already asked and answered.


MR. MARKS:

     No, it hasn't been, Judge.


THE COURT:

     I'll let him answer that.  Overruled.  Who did he speak with?  Again, I'd overrule that, Mr. Scaccia.


THE WITNESS:

     I had also been in contact with the victim's mother, Mr. Renaldo Cains's mother.


BY MR. MARKS:

Q.  Okay.  That's Ms. Zelda Cains?

A.  Yes, sir.

Q.  And after being in contact with her, were you able to perfect a photographic lineup of any suspects?

A.  Yes, sir, I was.

Q.  I'm going to show you what's previously been marked as State's Exhibit 21 in globo.  I'd ask you to identify that and explain to the jury exactly what that object is.


MR. SCACCIA:

     I'm going to object to this, Your Honor.  I object on the following grounds:  One, this matter has already been covered in a pre-trial hearing.  The procedure underlying the photographic lineup is not an issue at this time.  I have no objection to the officer testifying that a lineup was conducted and that this subject was picked out of the photographic lineup by Anthony [Thomas] and Kevin Pollard.  But to go into the procedures and how it was

38

obtained has already been the subject of a pre-trial
hearing and the results are now that the jury can hear
this.  Any questions other than that, we object to....

THE COURT:

    He's offering a stipulation right now as to -- You
heard what his stipulation is:  This Detective presented
a photo spread to those two people and they both made an
identification.  Are you willing to accept that
stipulation?

MR. MARKS:

    No, Judge.  I think the jury has a right to know how
that process is obtained.

THE COURT:

    All right.  Proceed....

MR. SCACCIA:

    -- if you're going to let him do that, I want it over
my objection on the record.

THE COURT:

    I note your objection . . . .

THE WITNESS:

    Yes, sir.  The process which I did here, and in any
case where you develop a suspect, with a name given on a
particular suspect, I acquire a photograph of that
individual --

MR. SCACCIA:

    Objection to of [sic] the name given as necessarily
involving hearsay.

THE COURT:

I'm going to overrule that objection, Mr. Scaccia.

Again, this is not as to the truth of the matter asserted, but simply what he did in order to get this lineup.

All right.   Proceed.


THE WITNESS:

With that individual suspect being identified as a suspect, I acquired his photograph and five additional photographs of individual[s] that have similar facial characteristics, that being age, hairstyle, and if appropriate, the same complexion. We use that photographic lineup, which is six photographs. That lineup is shown to witnesses and from that point those witnesses make or don't make an identification of what they saw.


BY MR. MARKS:

Q.  Okay.  And what is State's Exhibit 21 in globo?

A.  This is a photographic lineup that was done of one of the suspects.   It was given to -- individually on September 27th, to Mr. Thomas and Mr. Pollard.  They both identified the suspect in this lineup -


BY MR. SCACCIA:

Objection.  That identification was not subject to my cross-examination.  I object to it . . . .


THE COURT:

I would overrule[]that.[18]


It is well established that federal habeas review is limited

to questions of constitutional dimension.  See generally Jernigan

---

[18]State rec., vol. 1 of 6, trial transcript at pp. 65, 66, 67, 68, 69, 70, and 71 through line 16 (emphasis added).

v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); Castillo v. Johnson, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).  In reviewing a state trial court's alleged evidentiary error, such as the instant one set forth by Bowens, the federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'"  Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986), quoting Mattheson v. King, 751 F.2d 1432, 1445 (5th Cir.1985).

This court finds that Bowens did not suffer a violation of his constitutional rights by virtue of the trial court's alleged error in allowing, over defense counsel's objection, for Detective Demma to inform jurors that Bowens was identified by an individual, Zelda Cains, other than the two eyewitnesses, Kevin Pollard and Anthony Thomas.  Bowens was not prejudiced by this evidentiary error because of the strong, unrefuted testimony of Pollard and Thomas that Bowens shot the victim, Renaldo Cains.

Bowens further argues that in light of the trial court's blunder in allowing Detective Demma to inform jurors that Bowens's identity was revealed to him by Zelda Cains, a source independent of eyewitnesses Kevin Pollard and Anthony Thomas, defense "counsel

41

was compelled to inquire into the basis of Cains's mother's knowledge." (Rec. doc. 1, Bowens's supporting memorandum, p. 34). As such, pursuant to defense counsel's cross-examination, Detective Demma "revealed that Ms. Cains had received several telephone calls from witnesses who were willing to tell her who the suspect was but who were unwilling to provide this information to the police." Id. Because he was unable to examine these alleged witnesses, Bowens asserts that his constitutional right to confront his accusers was violated.

Under the Sixth Amendment, a criminal defendant has the right "to be confronted with the witnesses against him." Coy v. Iowa, 487 U.S. 1012, 1015 (1988). The Confrontation Clause generally bars witnesses from reporting the out-of-court statements of nontestifying declarants. See Crawford v. Washignton, 541 U.S. 36, 54-56, (2004). While Crawford was decided after the completion of Bowens's direct appeal, under its predecessor, Ohio v. Roberts, 448 U.S. 56, 65 (1980), admission of statements made by out-of-court declarants were generally barred when offered for the truth of the matter asserted.

In the instant case, the objectionable testimony was arguably not offered for the truth of the matter stated, but rather, was offered to explain how the photographic lineup came to be prepared

42

by Detective Demma.   Additionally, as the Louisiana Fourth Circuit noted in rejecting the instant claim, Bowens failed to object to Detective Demma's hearsay testimony to the effect that anonymous callers had informed Ms. Cains that Bowens shot her son.   See State v. Bowens, No. 2000-KA-0506, p. 7.   Rightfully, a petitioner forfeits his claim of a Confrontation Clause violation if he fails to object to the inadmissible hearsay testimony.   See Moya v. Sullivan 2010 WL 1023940, *8 (C.D. Cal. Jan. 22, 2010) (Nakazato, MJ.), adopted, 2010 WL 1023943 (Phillips, J.) (failure to object in the trial court on confrontation grounds prevents State from attempting to overcome objection by producing absent declarant).

Finally, and most significantly, Confrontation Clause violations are subject to harmless error analysis.   Brecht v. Abrahamson, 507 U.S. 619, 653 (1993), citing Coy v. Iowa, 487 U.S. 1012, 1021-1022 (1988).   As such, the issue to be resolved "is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"   Brecht, 507 U.S. at 637, quoting Kotteokos v. United States, 328 U.S. 750, 776 (1946).

Bowens cannot show that the admission of the hearsay statements through Detective Demma had a "substantial and injurious" effect upon the verdict in light of the strong eyewitness testimony provided by Kevin Pollard and Anthony Thomas.   Both Pollard and

43

Thomas unequivocally testified that they saw Bowens stand over and shoot Renaldo Cains.[19]   Accordingly, Bowens is not entitled to habeas corpus relief based upon the alleged violation of his right to confrontation by virtue of the admission of hearsay statements through the testimony of Detective Demma.   Accordingly;

## RECOMMENDATION

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Daniel Bowens be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415,

---

[19]See State rec., vol. 1 of 6, trial testimony of Kevin Pollard, p. 22, lines 23-32, p.23; trial testimony of Anthony Thomas, p. 104, lines 7-26.

1430 (5th Cir. 1996)(<u>en banc</u>).[20]

New Orleans, Louisiana, this <u>5th</u> day of <u>August</u>, 2011.

ALMA L. CHASEZ

UNITED STATES MAGISTRATE JUDGE

---

[20]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.