**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DANIEL BOWENS                          CIVIL ACTION

VERSUS                                 NUMBER:    05-5714

N. BURL CAIN, WARDEN                   SECTION:   "B"(5)

## ORDER AND REASONS

Before the court is Petitioner Daniel Bowens' ("Petitioner") objections (Rec. Doc. No. 50) to Magistrate Chasez's Report and Recommendation (Rec. Doc. No. 49) recommending dismissal with prejudice of Petitioner's habeas corpus petition under 28 U.S.C. § 2254. Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Petitioner's Objections to the Magistrate's Report be and are hereby **OVERRULED**. For the following reasons, the Magistrate's Report is hereby adopted, and Petitioner's petition for federal habeas corpus review is **DISMISSED WITH PREJUDICE** as without merit.

## PROCEDURAL HISTORY

On November 22, 1995, Petitioner, was convicted of one count of second-degree murder. (Rec. Doc. No. 49 at 2). He was indicted by an Orleans Parish grand jury on December 2, 1993; Petitioner initially pled not guilty. *Id.* Following his plea, Bowens was examined as to his competency at both the time of the alleged offense and the time of the grand jury proceedings. *Id.* On January 13, 1994, the trial court found Petitioner to be not competent to assist his defense counsel. *Id.* There was a second hearing on

August 23, 1994, where he was again found incompetent. *Id.* There was a third hearing on October 5 and 19, 1995, where he was finally found competent to stand trial. *Id.* After his conviction in November 1995, his motion for a new trial was denied. *Id.* He was sentenced to life imprisonment of hard labor without the benefit of parole, probation, or suspension of sentence. *Id.*

The Louisiana Fourth Circuit Court of Appeal affirmed Petitioner's conviction and sentence on October 8, 1997. *Id.* (*citing State v. Bowens*, No. 1996-KA-1199 (La. App. 4 Cir. 10/8/97), 701 So.2d 271). The Louisiana Supreme Court denied Petitioner's writ application on May 29, 1998. (Rec. Doc. No. 49 at 3 (*citing State v. Bowens*, 719 So.2d 1276 (La. 1998)).

On or about February 10, 1999, Petitioner submitted a post-conviction relief application that was denied by the state district court on the same day. *Id.* Following that unfavorable ruling, Petitioner requested writs from the Louisiana Fourth Circuit; on April 15, 1999, the Fourth Circuit ruled in his favor and directed the trial court to grant him an out-of-time appeal. *Id.* (*citing State v. Bowens*, No. 1999-K-0480 (La. Ap. 4 Cir. 4/15/99)). After Petitioner filed an appeal as directed, the Louisiana Fourth Circuit again affirmed his conviction and sentence on February 7, 2001. (Rec. Doc. No. 49 at 3 (*citing State v. Bowens*, No. 2000-KA-0506 (La. App. 4 Cir. 2/7/01)). On January 25, 2002, writs were again denied by the Louisiana Supreme Court. *Id.* (*citing State v.*

*Bowens*, 806 So.2d 670 (La. 2002).).

Petitioner filed a post-conviction application for relief with the state district court on August 16, 2002; this application was litigated to the Louisiana Supreme Court. *Id.* at 4. On June 24, 2005, relief was denied. *Id.* (*citing State ex rel. Bowens v. State*, 904 So.2d 731 (La. 2005)).

Petitioner filed the instant federal habeas petition on November 17, 2005, with the following claims for relief: 1) the standard relied on by the trial court in determining his competency to stand trial violated his right to due process; 2) the grand jury selection process was violative of his constitutional rights; 3) the indictment charging him with second degree murder was defective because it failed to allege the essential elements of the offense; 4) Petitioner received ineffective assistance of counsel; and 5) the trial court erred in admitting evidence regarding the production of the photographic line-up. (Rec. Doc. No. 49 at 4).

On March 18, 2008, Magistrate Judge Chasez issued a Report and Recommendation (Rec. Doc. No. 28). determining that Petitioner's out-of-time appeal did not restart the direct review process for purposes of resetting the federal limitations period; relying on *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004), Magistrate Judge Chasez found Petitioner's habeas application to be untimely. (Rec. Doc. No. 49 at 5). On September 18, 2008, the District Court adopted the Magistrate Judge's Report and Recommendation (Rec. Doc.

No. 31) and ordered that the Petitioner's application be dismissed as untimely.

The United States Supreme Court decision in *Jimenez v. Quartermain*, 555 U.S. 113 (2009), handed down on January 13, 2009, effectively abrogated *Salinas*. (Rec. Doc. No. 49 at 5). The Court determined that a state court's granting of an out-of-time appeal does restart the direct review process for the purposes of resetting the federal limitations period. On June 10, 2010, based on *Jimenez*, the United States Fifth Circuit Court of Appeals vacated the District Court's determination that the above-captioned matter was untimely and remanded the matter for further proceedings. (Rec. Doc. No. 40).

Magistrate Judge Chasez, after recognizing that Petitioner's application was timely under *Jimenez*, then ordered the State to file a supplemental response addressing Petitioner's habeas petition on the merits. (Rec. Doc. No. 42). In its supplemental response (Rec. Doc. No. 48), the State conceded that Petitioner's habeas application was timely and that Petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509 (1982). (Rec. Doc. No. 49 at 6).

## CONTENTIONS OF PETITIONER

Petitioner's Objections to the Report and Recommendation asserted the same five claims for relief contained in his original petition: 1) the standard employed in determining competency

4

violated due process; 2)the grand jury selection process was unconstitutional; 3)the indictment for second-degree murder was defective; 4) defense counsel was ineffective; and, 5)the trial court improperly admitted evidence of photographic evidence. (Rec. Doc. No. 50 at 3-8). Petitioner contended that the cumulative effect of these claims amounts to a violation of his constitution rights. *Id.* at 9-10.

<u>**CONTENTION OF RESPONDENT**</u>

Counsel for respondent did not file a response to Petitioner's Objections to the Magistrate's Report and Recommendation.

<u>**LAW AND ANALYSIS**</u>

**A. Standard of Review**

Petitioner's original writ for federal habeas corpus review under 28 U.S.C. § 2254 was filed with this Court on November 17, 2005. As this is after the effective date for the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applicable to habeas corpus petitions, his petition is governed by § 2254 as amended by AEDPA. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998)(*citing Lindh v. Murphy*, 521 U.S. 320 (1997)). As amended by AEDPA, the standard of review under § 2254(d)(1) provides deference to the state court's determinations on questions of law and law and fact unless it was, "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

5

A federal court may issue a habeas writ under the "contrary to" clause if "the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685 (2002) (internal citations omitted). An unreasonable application of federal law in a state court's decision is one that is "objectively unreasonable" as applied to the facts of a particular case. *Williams v. Taylor*, 529 U.S. 362, 409 (2000). For questions of fact, § 2254(d)(2) requires that a state court's decision will be presumed correct unless it was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

## B. The standard employed in determining competency

Petitioner contends that the State employed a standard of review in assessing his competency to stand trial that was deemed violative of due process by the United States Supreme Court in *Cooper v. Oklahoma*, 517 U.S. 348 (1996) and as such, he is entitled to habeas corpus relief. (Rec. Doc. No. 49 at 10). Prior to trial, Petitioner was found not competent to stand trial on two different occasions; he was finally deemed competent in October 1995. *Id.* at 2.[1] Dr. Kenneth Ritter, a member of the sanity commission,

---

[1] Petitioner was shot in the head on November 2, 1993. (Rec. Doc. No. 49 at 8). At the second sanity hearing in August 1994, Dr. Kenneth Ritter opined that Petitioner may never regain competency

testified that Petitioner was competent to proceed to trial under the *Bennett* criteria.[2] *Id.* at 11. Dr. Ritter stated that he had explained the criminal charges to Petitioner and that Petitioner understood what was happening at the time of the hearing. *Id.*

The thrust of Petitioner's objection was that the court judged his competency under the "clear and convincing evidence" standard. At the time of Petitioner's competency hearings, the applicable statute (La.C.Cr.P. art. 648(A))[3] provided that criminal prosecution could continue unless the defendant made a showing of incompetency by clear and convincing evidence. (Rec. Doc. No. 49 at 11-12). In *Cooper*, the Supreme Court found that an Oklahoma law presuming that the defendant is competent to stand trial unless he proves incompetence by clear and convincing evidence violates due process. 116 S.Ct. At 1373. In that case, the Court noted that the state may presume that a defendant is competent to stand trial unless the defendant can satisfy the burden of proving a lack of mental capacity by a preponderance of the evidence. *Id.* This presumption is in line with *Medina v. California*, 505 U.S. 437,

_____

due to this brain injury. *Id.* at 10.

[2] *See State v. Bennett*, 345 So.2d 1129 (La. 1977).

[3] Article 648(A) has since been amended to require the appropriate "preponderance of the evidence" standard. The statute currently reads that, following a sanity hearing, the criminal proceeding will continue unless the court determines by a preponderance of the evidence that the defendant does not have the mental capacity to proceed. La.C.Cr.Pro. art. 648(A).

which established this presumption of competence and gave the defendant the burden of proving incompetence by a preponderance of the evidence. 505 U.S. at 449. Petitioner argued that since the standard used to judge his competency had been found to violate due process, there should be a *Nunc Pro Tunc* hearing into his competency under the proper preponderance of the evidence standard. (Rec. Doc. No. 50 at 3).

The state appellate court, in its review of Petitioner's sentence, found that despite this error, a reversal of his conviction was unnecessary. (Rec. Doc. No. 49 at 12). The basis for this conclusion was that, even if the proper standard of review had been used, there was no evidence to support the contention that Petitioner was incompetent. *Id.* A review of the trial record revealed that Petitioner "failed to prove his mental incapacity to proceed even by a preponderance of the evidence" and so any error by the trial court was harmless. *Id.*

The state appellate court decision in the instant case was consistent with the District Court finding in *Lambert v. Cain*, 2001 WL 274511 (E.D. La. 3/20/01). In *Lambert*, the petitioner argued that he was entitled to habeas relief because the state trial court had used the "clear and convincing evidence" standard when determining his competency. *Id.* There, Judge Morrison found that a thorough review of the evidence presented at the competency hearings indicated that "[i]n fact, there was virtually no evidence

8

presented that the Defendant did not have the mental capacity to proceed." *Id.* at *9. Therefore, *Cooper* was inapplicable because there was no evidence of incompetency before the court. *Id.* at *14.

The situation in the instant case is analogous to *Lambert*. Here, Dr. Ritter testified that Petitioner knew the charges against him and was able to assist in his defense. (Rec. Doc. No. 49 at 10-11).[4] The Petitioner took the witness stand at his trial and testified on his own behalf. *Id.* at 14. Through his testimony, it was revealed that he was aware of the charges against him and that he understood and competently answered the inquiries presented on both direct and cross examination. *Id.* at 14-15. Adopting the *Lambert* standard, where the court decided that, regardless of the standard used, the unimpeached evidence of the defendant's competency to proceed can only support a finding of competency in the case. 2001 WL 274511 at *9. Further, there is no showing that the state appellate court's finding of competency, using the correct legal standard, was either erroneous or deficient in any respect.

The Magistrate Judge was correct in finding that this claim for habeas relief was without merit based on facts and law here.

---

[4] The current standard for incapacity is codified in La. C.Cr.Pr. art. 641. Per this statute, "mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." (La.C.Cr.Pr. art 641).

**C. Composition of Grand Jury**

Petitioner's complaint about the composition of the grand jury that indicted him was two-fold: he argued that the foreperson was selected in a discriminatory manner and that the selection procedure employed in Orleans Parish violated a Louisiana constitutional provision against passage of local laws concerning criminal activity. (Rec. Doc. No. 49 at 15, 21). In his Objections to the Magistrate's Report, Petitioner asserted that the "denial set fourth [sic] under this unconstitutional state law" violated his due process rights. (Rec. Doc. No. 50 at 4).

In *Rose v. Mitchell*, 443 U.S. 545 (1979), the Supreme Court established that a "criminal defendant's right to equal protection of the laws has been denied when he is indicted by a grand jury from which members of a racial group purposefully have been excluded." 443 U.S. at 557. If a criminal petitioner can successfully demonstrate racial or gender discrimination in the selection of the grand jurors who indicted him, he is subject to relief, even without a showing of prejudice. *Id.* The standards for demonstration were set out in *Castaneda v. Partida*, 430 U.S. 482 (1977). First, the petitioner must prove that the selection procedure "resulted in substantial under-representation of his race or of the identifiable group to which he belongs." 430 U.S. at 494. To do that, a petitioner must establish: (1) that the group is a recognizable, distinct class that has been singled out for

10

differential treatment under the law; (2) the degree of under-representation must be proved;[5] and, (3) the selection procedure that is susceptible of abuse or is not racially neutral supports a presumption of discrimination made by statistical showing. *Id.* at 494-95. If the defendant can show a substantial under-representation, he has established a prima facie case for discriminatory purpose and the burden shifts to the Government to rebut the claims. *Id.* at 495. In *Mosley v. Dretke*, 370 F.3d 467 (5th Cir. 2004), the Fifth Circuit recognized that absolute disparities between the population of the excluded group and the proportion called to serve as grand jurors of "10% or less are insufficient to warrant relief." 370 F.3d at 487.

In the instant case, Petitioner provides no independent evidence of discrimination against African Americans or females on the grand jury that indicted him. (Rec. Doc. No. 49 at 17). Instead, he relies solely on information presented in a case arising from the Orleans Parish Criminal District Court, *State v. Fleming*, No. 401-182, Section "K". The Honorable Arthur L. Hunter found that the defendants had established prima facie cases in the selection of grand jury forepersons in Orleans Parish between 1987 and 2000, in violation of the Fourteenth Amendment. *Fleming* was

---

[5] Under the "Rule of Exclusion," one can prove the degree of under-representation by comparing a proportion of the group in the total population with the proportion called to serve as grand jurors over a significant period of time. *Castraneda*, 430 U.S. 482, 495.

overturned on appeal, when the Louisiana Fourth Circuit found that the evidence provided was insufficient "for the purpose of satisfying the burden of proving a sufficient under-representation via a comparison of the proportion of the groups." *State v. Fleming*, No. 2002-KA-1700 (La. App. 4 Cir. 4/16/03), 846 So.2d 114, 120. The Louisiana Supreme Court then denied a writ application for appeal. *State v. Fleming*, 860 So.2d 1132 (La. 2003). Since Petitioner relied on evidence that was found lacking by both the Louisiana Fourth Circuit and the Louisiana Supreme Court, the Magistrate Judge concluded that this claim for habeas relief was without merit. (Rec. Doc. No. 49 at 20).

In his objections, Petitioner asserts that, due to his felony conviction, sentence and incarceration, he was unable to obtain the records needed to prove the unconstitutional composition of the grand jury. (Rec. Doc. No. 50 at 4). However, in *Lindsey v. Cain*, 2009 WL 1575466 (E.D. La. May 29, 2009), Magistrate Judge Moore demonstrated that the evidence relied upon by Petitioner in the instant case was factually lacking. The evidence submitted in *Fleming* showed that 31 forepersons were selected between 1987 and 2000. 2009 WL 1575466 at 10. Of those 31, 6 had an unknown race and gender. *Id.* Judge Moore postulated that "if out of those 31 grand jury forepersons, there were sixteen African-Americans (10 known to be African-American and 6 whose race was unknown but potentially African-American), then more than 51.6 percent of grand jury

12

forepersons could have been African-American." *Id.* At the time, African-Americans comprised 58 percent of registered voters, so there was less than 7% difference between the two groups. Per *Mosely*, this is insufficient to establish a substantial under-representation. 370 F.3d at 479. Of the 31 forepersons selected during 1987 and 2000, 17 of those were potentially female (11 known to be female and the 6 unknown but possibly female). 2009 WL 1575466 at 10. Therefore, approximately 55 percent of grand jury forepersons were female, compared to 57 percent of registered voters that were female. Again, the two percent absolute disparity is insufficient under *Mosely* to establish substantial under-representation. *Id.*

Given that the *Fleming* evidence relied upon by Petitioner is deficient due to its incompleteness, Petitioner failed to make the requisite prima facie case of discrimination. There is no basis for the conclusory claim that incarceration prejudiced this Petitioner's access to records showing the grand jury's composition. Therefore, this claim for habeas relief is without merit.

Secondly, Petitioner argues that the grand jury selection procedure at the time he was indicted violated the Louisiana Constitutional prohibition against the passage of local laws concerning criminal actions. (Rec. Doc. No. 49 at 21). Petitioner supports his argument with the Louisiana Supreme Court's opinion

in *State v. Dilosa*, 848 So.2d 546 (La. 2003), wherein the court determined that "the provisions of a Louisiana law which established a unique method for the selection of grand jury venire and the foreperson was indeed violative of the Louisiana constitutional prohibition against the passage of local laws concerning criminal actions." *Id.* However, in the instant case, <u>Dilosa</u> offers no relief because federal habeas relief can only be offered to remedy federal violations; mere violations of state law are not enough to trigger relief. *See, e.g.*, *Varnado v. Cain*, Civil Action 02-1286 c/w 03-752 and 03-754, doc. No 28, p. 5 (E.D. La. Feb. 2, 2004); 28 U.S.C. § 2254(a). Since Petitioner only alleged a state law violation, this claim for habeas relief is necessarily without merit.

**D. Defective Indictment**

In his objections to the Magistrate's Report, Petitioner stood by his original claim that his indictment for second degree murder was defective. (Rec. Doc. No. 50 at 5). In his original petition for habeas relief, Petitioner alleged that the indictment was unconstitutionally issued because it "failed to allege the essential elements of the charged offense." (Rec. Doc. No. 49 at 21-22). It is well-established that a defective indictment provides a basis for habeas relief if the defect is so significant that the convicting court lacked jurisdiction under state law. *See generally Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993); *Yohey v.*

14

*Collins*, 985 F.2d 222 (5th Cir. 1999).

In his request for habeas relief, Petitioner relied on *United States v. Cabrera-Teran*, 168 F.3d 141 (5th Cir. 1999), where the Fifth Circuit ruled that, in order to be sufficient, an indictment had to include each material element of the charged offense. In *Cabrera*, the indictment was found insufficient because it did not include the "arrest" element of the charged crime (there, illegal reentry into the United States). 168 F.3d at 143. The Fifth Circuit agreed that the indictment was deficient because it failed to charge an actual offense and so the District Court lacked proper jurisdiction to hear the case. *Id*. at 147. In the instant case, Petitioner asserted that since he was charged using the "short form" indictment, there was a failure to include an arrest element and so the court lacked jurisdiction in his case. *Id*. at 23.[6]

However, Petitioner's reliance on *Cabrera* was misplaced; the *Cabrera* standard was overturned by the Supreme Court in *United States v. Cotton*, 535 U.S. 625 (2002). There, the Court decided that a defective indictment does not deprive a court of jurisdiction. 525 U.S. at 625. The Fifth Circuit followed the *Cotton*

---

[6] Petitioner's indictment provided that Petitioner and co-defendant Landon Marshall were "within the district of Criminal District Court for the Parish of Orleans" and they "committed Second Degree Murder of Renaldo Cains, contrary to the form of Statute of the State of Louisiana." (Rec. Doc. No. 49 at 22). This "short form" indictment is authorized by La.C.Cr.P. art 462 and La.C.Cr.P. 465(A)(32). *Id*.

decision in *United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002), and recognized that *Cotton* overruled past decisions (like *Cabrera*) that held a defective indictment would deprive a court of jurisdiction.

In the instant case, the indictment against Petitioner was sufficient. The Supreme Court has held that an indictment is sufficient if it informs the defendant of the accusation against him so as to enable him to prepare for his defenses and affords protection against double jeopardy. *United States v. Debrow*, 346 U.S. 347 (1953). In the instant case, the indictment complied with the *Debrow* standard for constitutional sufficiency. Through his indictment, Petitioner was on notice of the crime of which he was accused, the date and venue of the accused crime and the identity of the victim. (Rec. Doc. No. 49 at 25).

Even if the indictment was insufficient under the *Debrow* standard, there could not be federal review of the instant claim. *Id*. Petitioner previously brought his claim of defective indictment in his post-conviction application to the Louisiana Supreme Court. *Id*. at 24. Since the Louisiana Supreme Court denied his application, they "necessarily acquiesced" by their denial of the claim that the indictment was sufficient. *Id*. Since the Louisiana Supreme Court refused the opportunity to address Petitioner's challenge to this indictment and thus implied that the indictment was proper, federal review of this claim is prohibited. *Id*.

16

Since the claim was sufficient per federal standards articulated by the Supreme Court in *Debrow*, the Magistrate's finding that Petitioner is not entitled to federal habeas relief on this claim was correct.

## E. Ineffective Assistance of Counsel

The appropriate Supreme Court standard for judging ineffectiveness of counsel is *Strickland v. Washington*, 466 U.S. 668. In *Strickland*, the Court held that the petitioner must demonstrate an error made by counsel was both deficient and prejudicial to the defense. 466 U.S. at 691-92. In order for the judgment to be set aside, the petitioner has to make a sufficient showing on both prongs. *Id.* at 693.

To establish that the counsel was deficient, the court must consider "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. To prove prejudice, the defendant must show that there is a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 69). Per *Strickland*, a reasonable probability is one "sufficient to undermine confidence in the outcome" of a case. *Id.*

In his petition for habeas relief, Petitioner alleged seven instances where his court-appointed counsel failed to meet the

17

*Strickland* standard. (Rec. Doc. No. 50 at 5-8). In his objections to the Magistrate's Report, Petitioner requests that the Court consider his claims in light of the cumulative errors holdings in *Koon v. Cain*, 277 Fed. Appx 381 (5th Cir. 2008) and *Kyles v. Whitley,* 115 S.Ct. 1555 (1995). He argued that he met the standard of showing that, all totaled, "counsels [sic] action denied him a fundamentally fair trial and a judgement [sic] that is reliable of his conviction." (Rec. Doc. No. 50 at 8). Petitioner claimed that, therefore, "but for counsels [sic] ineffective assistance, [he] would not have been convicted of a crime for which he is innocent." *Id.*

### 1. Failure to interview and subpoena defense witnesses

Petitioner alleged that he provided his counsel with the names of six witnesses that would have testified on his behalf; their testimony would have included information about his physical condition at the time of the shooting[7] and the hostile relationship between Kevin Pollard (one of the State's witnesses) and the Petitioner.[8] (Rec. Doc. No. 50 at 6). In his Objections, Petitioner

---

[7] The day of the murder, Petitioner had been shot in the thigh. (Rec. Doc. No. 49 at 7). Petitioner's mother testified that he was treated at the hospital and released the same day. *Id.* at 8.

[8] State's witness Kevin Pollard was one of the people who had shot Petitioner in the head on November 2, 1993. (Rec. Doc. No. 49 at 8). However, Petitioner did not inform the police of this fact at the time of the shooting. *Id.*

claimed that if his counsel had located and interviewed these witnesses, Petitioner would have been able to prove his innocence at the trial. *Id.*

In order for the *Strickland* requirement of prejudice to be met, Petitioner must demonstrate that it is reasonably probable that had these witnesses been called, the outcome of the trial proceeding would have been different. By his own admission, the witnesses that would have been called would have not been able to offer an alibi or an explanation of his whereabouts at the time of the victim's murder. (Rec. Doc. No. 49 at 27). The crux of his complaint is that the missing testimony would have damaged the credibility of State's witnesses Pollard and Anthony Thomas, who stated that both Petitioner and his co-defendant Landon Marshall were standing over the victim at the time of the shooting. *Id.*

According to the Petitioner, all of these witnesses offered testimony at Marshall's trial stating that Marshall was not in the area at the time of the shooting. *Id.* Despite this alleged testimony that Marshall was not in the area when the shooting occurred, Marshall was found guilty of shooting Cains. *Id.* at 27-28. So, even with the testimony of these witnesses, a jury gave greater weight to the testimony of the State's witnesses and were able to reasonably conclude that Marshall had committed the crime. Petitioner offered no indication why the outcome would have been different in the instant case. Thus, the state court conclusion

that Petitioner failed to make the requisite prejudice showing was correct. *Id.* at 28.

Petitioner failed to make the requisite showing of prejudice under *Strickland* and so this ineffectiveness claim is without merit.

**2. Failure to seek continuance of trial**

Petitioner asserted that since counsel was only appointed 32 days before the trial started, he should have requested a continuance in order to adequately prepare a defense. (Rec. Doc. No. 49 at 28). In his objection, Petitioner claimed that counsel failed to conduct any sort of investigation into the case. (Rec. Doc. No. 59 at 5). The only specific instance of a failure to investigate offered was that counsel would have learned that Petitioner was physically unable to run on the day of the shooting due to his thigh wound. *Id.* However, the state record indicates there are several instances of testimony that clearly speak of Petitioner's physical condition on the day of the murder.[9] Since the only specific instance Petitioner alleged was actually brought up during trial, he failed to state a plausible course of action

---

[9] For example, Petitioner's mother testified that she had been with her son at the hospital on the day of the murder because he had been shot in the thigh. (Rec. Doc. No. 49 at 7-8). She further stated that he was barely able to walk when she dropped him off at his home. *Id.* at 8. Petitioner's sister testified that her brother was limping and dragging his leg the day of the murder. *Id.* Finally, Petitioner himself testified that he could barely walk at the time that the victim was shot. *Id.*

that his counsel could have taken if he had requested an extension; absent is any proof that would have brought about a different end. (Rec.Doc. No.49 at 28).

Since Petitioner failed to meet his burden of proof under *Strickland,* this ineffectiveness claim is without merit.

### 3. Failure to question State witnesses regarding whether they had struck a deal with the State in exchange for testimony

In his original writ for habeas relief, Petitioner claimed that counsel "should have cross-examined Kevin Pollard and Anthony Thomas as to whether there had been a deal between them and the State in exchange for their testimony against petitioner." (Rec. Doc. No. 1 at 24). He claimed this was a legitimate line of cross-examination because both Thomas and Pollard had pending criminal charges at the time of Petitioner's trial. *Id.* The thrust of Petitioner's complaint was that counsel failed to "attempt to expose Pollard and Thomas's bias and motivation for tailoring their testimony in the prosecutions [sic] favor." *Id.* at 26.[10]

Nothing in the trial record suggests that Thomas or Pollard had a criminal conviction of any kind at the time they testified against Petitioner. (Rec. Doc. No. 49 at 29).[11] Therefore, there is

---

[10] In fact, during Marshall's trial, his defense attorney questioned if any of the State's witnesses were "currently under indictment" or "under an agreement of any type of immunity or plea bargaining"; in its response, State answered negatively. (Rec. Doc. No. 49 at 29).

[11] Defense Counsel attempted to question Thomas and Pollard regarding past arrests and past convictions, but was met with

no factual basis for Petitioner's claim besides his unsupported allegation that Thomas and Pollard were under criminal charges at the time of their testimony. *Id.* at 30. As such, counsel was not deficient for not engaging Thomas and Pollard in this testimony. *Id.*

Since Petitioner failed to satisfy his burden of proof under *Strickland*, this claim for relief is without merit.

### 4. Jurors informed that Petitioner's co-defendant, Landon Marshall, had been convicted

In his original writ for habeas corpus relief, Petitioner claimed that counsel was ineffective because he informed jurors that Landon Marshall had been convicted during his opening statement. (Rec. Doc. No. 1 at 42). Petitioner contended that counsel "poisoned the jury at that point because he was well aware that the jury would hear evidence from the state that Landon Marshall and petitioner shot and killed Renaldo Cains." *Id*) However, in his objections to the Magistrate's Report, Petitioner argued that counsel was ineffective for a failure to inform the jury of Marshall's conviction. (Rec. Doc. No. 50 at 6). Given that the Magistrate responded to the original claim and Petitioner's only objection regarded a denial of access to records needed to prove his claim, the court should only consider Petitioner's

strenuous objections by the Court and the Assistant District Attorney on relevancy grounds. (Rec. Doc. No. 49 at 29).

original assertion on this matter. (Rec. Doc. No. 49 at 30, Rec. Doc No. 50 at 7).

According to Petitioner, the only justification for counsel informing jurors of Marshall's conviction would be in an attempt to place all blame on Marshall. (Rec. Doc. No. 49 at 50). A review of the record indicated that counsel did, in fact, introduce the evidence for that purpose. *Id.* In his opening statement, counsel advised jurors that Renaldo Cains, before he died, told the police officer on the scene that "he did not know who shot him, and that there was only one perpetrator." (Rec. Doc. No. 49 at 31). Thus, counsel introduced evidence of Marshall's conviction in a clear attempt to influence the jurors into thinking that he was the lone perpetrator.

Since counsel introduced evidence for the only purpose that Petitioner claimed in his writ to be the proper justification, there seems to be no real issue here. There is no fault for this reasonable and strategic move. Once again, there is no factual basis to support Bowens' ineffectiveness claim.

### 5. Failure to object to the photographic identification of Petitioner as the shooter by State witnesses Pollard and Thomas

In his original writ for habeas relief, Petitioner urged that counsel should have objected to the photographic lineup used by the State for relevancy. (Rec. Doc. 1 at 44). Specifically, he argued that the evidence was irrelevant because "both witnesses testified

that they knew both petitioner and co-defendant Marshall and had identified them as the shooters prior to the line up." *Id.*

In Louisiana, relevant evidence is any evidence having a tendency to make the existence of any fact that is of consequence to the action more probably or less probable than it would be without the evidence. La. C.E. Art. 401. In the instant claim, Petitioner must show that but for counsel's error in failing to object to the photographic evidence, there is a reasonable probability that the result of his proceeding would have been different. Given that both Pollard and Thomas identified Petitioner without the aid of a photographic lineup, there is no showing of prejudice under *Strickland*. (Rec. Doc. No. 49 at 32). Therefore, this claim is without merit.

### 6. Eliciting damaging hearsay testimony during the Cross Examination of New Orleans Police Department Detective Marco Demma

During his cross-examination of Detective Demma, Petitioner's counsel elicited testimony from him that he had received information from the victim's mother regarding who had shot her son. (Rec. Doc. No. 1 at 30). These people "were willing to tell her who shot Renaldo, but were unwilling to provide this information to the police." *Id.* Petitioner claims that the admission of this evidence violates his Sixth Amendment right to confront and cross-examine his accusers. *Id.* at 30-31. Under relevant Louisiana law, the content of an informant's tip cannot be

24

used at trial by a law enforcement officer. *State v. Hawkins*, 688 So. 2d 473, 478 (1997). In the instant case, however, the hearsay testimony was elicited by the defendant and not the State. The Fourth Circuit Court of Appeal noted in *State v. Bowens* that "because the actual hearsay was elicited by defendant and not the state...defendant has no basis for complaining about its admitted into evidence." No. 2000-KA-0506, p.7 (La. App. 4 Cir. 2/7/01); 786 So.2d 982. The Fourth Circuit conclusion is supported by *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999), which stated that, to the extend that counsel arguably elicited hearsay testimony as part of his defense strategy, his action cannot be deemed deficient. 194 F.3d at 612.

Even if counsel's action was deficient, Petitioner cannot make the requisite showing of prejudice under *Strickland*. Even without the hearsay testimony offered by Detective Demma, the State would have presented evidence of Pollard and Thomas, two eyewitnesses to the crime that positively identified Petitioner as the shooter. (Rec. Doc. No. 49 at 34). Therefore, Petitioner is not entitled to habeas relief on the instant claim because he failed to make the requisite showing of prejudice.

### 7. Failure to challenge Petitioner's grand jury indictment

Petitioner argued that counsel should have challenged the indictment because the "record evidence clearly reflects that [he] has proven a prima facie case of race/gender discrimination." (Rec.

Doc. No. 1 at 31). However, this claim is without merit because Petitioner failed to prove the factual basis for this claim, as noted above. Thus, once again, Petitioner has failed to make the required *Strickland* showing of prejudice on the instant claim.

Further, the Magistrate's Order noted that, even if Petitioner's assertion of a deficient indictment was correct, there still would have been no prejudice on the part of counsel. (Rec. Doc. No. 49 at 35). A claim of deficient indictment must be raised in a timely manner to merit relief; in the instant case, this would have resulted in an immediate re-indictment due to the severity of the charges lodged against Petitioner. *Id.* It would not have resulted, as Petitioner claims, that the charges against him would be dismissed with prejudice. *Id.*

## F. Trial Court Admitted Evidence Regarding Production of Photographic Identification Evidence

In his original writ, Petitioner appeared to complain that the trial court erred by allowing Detective Demma to offer hearsay testimony regarding how he compiled the photographic lineups used by Pollard and Thomas to identify Petitioner. (Rec. Doc. No. 49 at 35). Petitioner took particular issue that the State was repeatedly able to inform the jury that he was a suspect based on information obtained independently of Pollard and Thomas; specifically, the information provided by the victim's mother to Detective Demma. (Rec. Doc. No. 1 at 34). He argued that since he was not permitted

26

to confront the accusers and cross-examine them on the basis of their knowledge, the evidence solicited by Detective Demma was prejudicial under the Sixth Amendment. *Id.* According to the trial record, defense counsel objected to the admission of this testimony, but it was overruled by the trial judge multiple times. (Rec. Doc. No. 49 at 37-39). In his Objections to the Magistrate's Report, Petitioner claimed that this specific event should be in support of his general claim that counsel was ineffective. (Rec. Doc. No. 50 at 9). As discussed above, Petitioner was unable to prove that counsel was ineffective under the *Strickland* standard on this issue. Thus, this charge will only be analyzed for Confrontation Clause issues.

Given that federal habeas review is limited to matters of constitutional concern and not a state trial court's evidentiary errors, the role of the federal court in this instance is "limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness. *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986), *quoting Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir. 1985). The Magistrate Court found that Petitioner was not prejudiced by this evidentiary error "because of the strong, unrefuted testimony of Pollard and Thomas that [Petitioner] shot the victim, Renaldo Cains." (Rec. Doc. No. 49 at 41).

Regarding Petitioner's argument that the trial court erred in

allowing Detective Demma's testimony regarding information gotten from the victim's mother, the Magistrate Court found that the objectionable testimony was not offered for the truth of the matter asserted and so did not implicate the Confrontation Clause. *Id.* at 42. Under current Supreme Court jurisprudence, the Confrontation Clause generally bars witnesses from reporting the out-of-court statements of non-testifying defendants. *See Crawford v. Washington*, 541 U.S. 36, 54-56 (2004). *Crawford* was decided after Petitioner's direct appeal to the Fourth Circuit; at that time, *Ohio v. Roberts*, 448 U.S. 56 (1980) controlled. Under *Roberts*, admission of statements made by out-of-court declarants was generally barred when offered for the truth the matter asserted. Here, however, the evidence was not offered to prove that Petitioner committed the murders but rather to show how Detective Demma assembled the photographic lineup.[12] Further, Petitioner did not object in the trial court to the inadmissible hearsay testimony to the effect that anonymous callers had informed the victim's mother of Petitioner's involvement; the objections were limited to the compiling of the photographic evidence. *See State v. Bowens*,

---

[12] At trial, the Prosecutor refused to accept a stipulation that Detective Demma made a photographic spread to show to Pollard and Thomas and they then made an identification from it. (Rec. Doc. No. 49 at 39). His reasoning was that he thought the jury had a right to know "how that process is obtained." *Id.* When the defense counsel objected, the Judge overruled, stating that this line of questioning was "not as to the truth of the matter asserted, but simply what he did in order to get this lineup." *Id.* at 39-40.

No. 2000-KA-0506, p. 7 (La. App. 4 Cir. 2/7/01); 786 So.2d 582. It has been established that a petitioner forfeits his claim of a Confrontation Clause violation if he fails to object to the inadmissible hearsay testimony on confrontation grounds. *See Moya v. Sullivan*, 2010 WL 1023940, *8 (C.D. Cal. Jan. 22, 2010). Therefore, there is no grounds for review of the instant claim.

Even if Petitioner were entitled to review, there would still not be a showing of prejudice enough to warrant habeas relief. Confrontation Clause errors are subject to harmless error analysis. *Coy v. Iowa*, 487 U.S. 1012, 1021-1022 (1988). Therefore, the issue to be resolved is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Kotteokos v. United States*, 328 U.S. 750, 776 (1946). The Magistrate Court correctly concluded Detective Demma's testimony regarding the compilation of the photographic lineup could not be shown to have a "substantial and injurious" effect due to the strong eyewitness testimony of Pollard and Thomas. (Rec. Doc. No. 49 at 43). Thus, Petitioner is not entitled to habeas relief on the instant claim.

Accordingly, **IT IS ORDERED** that Petitioner Bowens' Request for a writ of Habeas Corpus or, in the alternative, an evidentiary hearing on his petition is **DENIED based on a sufficient record**.

New Orleans, Louisiana, this 16th day of September, 2011.

UNITED STATES DISTRICT JUDGE